IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**RODERICK ALLEN COTTON, JR.,**

    Petitioner,

v.                                      CRIMINAL ACTION NO. 2:08-cr-87

**UNITED STATES OF AMERICA,**

    Respondent.

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Petitioner Roderick Allen Cotton, Jr.'s ("Petitioner") Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act ("First Step Act"). Pet'r's Mot. Compass. Release, ECF No. 56 ("Pet'r's Mot."); *see also* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). For the reasons stated herein, Petitioner's Motion is **GRANTED**.[1]

### I.   FACTUAL AND PROCEDURAL HISTORY

On May 21, 2008, Petitioner was named in a twelve-count Indictment, which charged him with Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951 (Counts One, Five, Seven, and Nine), Carjacking, in violation of 18 U.S.C. § 2119 (Counts Three and Eleven), and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts Two, Four, Six, Eight, Ten, and Twelve). Indictment,

---

[1] As another court in this District has recognized, "[n]otwithstanding the widely used label 'compassionate release' for motions filed under § 3582(c)(1)(A), the statute does not speak in terms of 'release,' but rather, authorizes courts to 'reduce' a term of imprisonment." *United States v. Hasan*, No. 2:10cr56, 2022 WL 1125391, at *1 n.1 (E.D. Va. Mar. 23, 2022) (emphasis in original).

1

ECF No. 1. On September 16, 2008, Petitioner pled guilty to Counts One, Two, and Twelve of the Indictment. Guilty Plea Mins., ECF No. 22.

At the time, Petitioner was subject to a statutory maximum of 20 years' imprisonment on Count One and a mandatory consecutive sentence of at least 384 months' imprisonment on Counts Two and Twelve. *See* Presentence Invest. Rep. ¶ 92, ECF No. 60 ("PSR"); *see also* 18 U.S.C. § 1951(a) (1994) (West); 18 U.S.C. §§ 924(c)(1)(A)(ii), (c)(1)(C), (c)(1)(D)(ii) (2006) (West). On January 5, 2009, the Court sentenced Petitioner to a total of 468 months, or 39 years, in prison, consisting of 84 months on Count One, to run concurrent with a state sentence, 84 months on Count Two, and 300 months on Count Twelve, all to run consecutively. J., ECF No. 29. Upon release from imprisonment, the Court sentenced Petitioner to serve a total term of five years of supervised release. *Id.* To date, Petitioner has served approximately 14 years and 6 months[2], or 37%, of his sentence and is set to be released on January 25, 2043.[3]

On August 23, 2021, Petitioner filed the instant Motion. Pet'r's Mot. On September 29, 2021, the Government filed a response in opposition. Resp't's Mem. Opp'n to Pet'r's Mot. Compass. Release, ECF No. 61 ("Mem. Opp'n"). On October 4, 2021, Petitioner filed a reply. Pet'r's Reply to Resp't's Mem. Opp'n to Pet'r's Mot. Compass. Release, ECF No. 62 ("Pet'r's Reply"). Accordingly, this matter is ripe for judicial determination.

## II. LEGAL STANDARD

### A. The Threshold Requirement

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of

---

[2] *See* PSR at 1 (continuously detained since Jan. 31, 2008); *but see* Pet'r's Mot. at Ex. 2, 1 (date sentence computation began listed as Jan. 5, 2009).

[3] *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 28, 2022).

2

the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the BOP bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies."). In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

### B. The Compassionate Release Standard

As amended by the First Step Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. §1B1.13, Application Note 1. Before the First Step Act was passed, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under

3

which a sentence reduction may be given under those justifications. U.S.S.G. §1B1.13, cmt. 1(A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at cmt. 1(D). Use of the "catch-all provision" prior to the First Step Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

U.S.S.G. §1B1.13 is now outdated, however, following the passage of the First Step Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, §1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("[W]here the [Sentencing] Commission fails to act, then courts make their own independent determinations of what constitutes an 'extraordinary and compelling reason[]' under § 3582(c)(1)(A), as consistent with statutory language."). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. §1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i). Ultimately, compassionate release motions "ask courts to balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other." *United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

### III. DISCUSSION

#### A. The Threshold Requirement

The Court finds that Petitioner satisfied the threshold requirement because he submitted a Request for Compassionate Release to the Warden of his BOP facility and he filed a Motion for

Compassionate Release with the Court more than 30 days thereafter. Pet'r's Mot. at Ex. 1; *Muhammad*, 16 F.4th at 131. The Government does not contest such. Mem. Opp'n at 2.

### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to reduce his sentence. Petitioner argues compassionate release is warranted for two such reasons: (1) "the disparity between [his] pre-First Step Act sentence and the sentence he would have received under current law"; and (2) "other case-specific factors, in conjunction with the proliferation of the COVID-19 pandemic." Pet'r's Mot. at 4, 6.

#### 1. Section 924(c) Sentencing Disparity

Petitioner first argues that his sentence is excessive and represents an unwarranted disparity after the First Step Act. Pet'r's Mot. at 7-13. The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has explicitly held that "[t]he fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i)." *McCoy*, 981 F.3d at 286. "Indeed, the very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for **sentence** reductions when there is *not* a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." *Id.* at 287 (emphases in original).

Here, the Court finds that "the severity of [Petitioner's] § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence [he] would receive today . . . constitute[s] an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." *Id.* at 285 (collecting cases). At the time and today, § 924(c)(1)(A)(ii) mandates, in relevant part, that "any person who, during and in relation to a crime of violence . . . uses or carries a firearm, or

who, in furtherance of any such crime, possesses a firearm, shall, *in addition* to the punishment provided for such crime of violence . . . if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years." 18 U.S.C.A. § 924(c)(1)(A)(ii) (2022) (West) (emphasis added). In other words, *in addition* to any sentence Petitioner received for Count One, the Court was, and still would be, required to impose a mandatory minimum of 7 years' imprisonment.

The critical disparity in Petitioner's case derives from the former mandatory "stacking" requirement under 18 U.S.C. § 924(c)(1)(C). Specifically, at the time Petitioner was indicted, convicted, and sentenced, § 924(c)(1)(C)(i) provided that, "[i]n the case of a *second or subsequent conviction under this subsection*, the person shall be sentenced to a term of imprisonment of not less than 25 years." 18 U.S.C.A. § 924(c)(1)(C)(i) (2006) (West) (emphasis added). The First Step Act amended § 924(c)(1)(C)(i), which now provides that, "[i]n the case of a *violation of this subsection that occurs after a prior conviction under this subsection has become final*, the person shall be sentenced to a term of imprisonment of not less than 25 years." *Id.* (2022) (West) (emphasis added). Thus, at the time Petitioner was sentenced, a defendant convicted under § 924(c) faced a consecutive 25-year mandatory minimum "even if the first § 924(c) conviction was obtained in the same case." *McCoy*, 981 F.3d at 275. Section 403 of the First Step Act "ended this practice, known as sentence 'stacking,' by clarifying that the 25-year mandatory minimum applies only when a prior § 924(c) conviction arises from a separate case and already has become final." *Id.* (internal quotations omitted). Now, that mandatory minimum "is reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution." *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1051 (2021).

Today, without sentence stacking, Petitioner would be sentenced under § 924(c) to a

mandatory minimum consecutive sentence of 168 months, or 14 years, as opposed to 384 months, or 32 years. Specifically, in addition to the punishment he would face for Count One, Petitioner would face two mandatory minimum consecutive sentences of seven years on Counts Two and Twelve. *See* Indictment at 2, 7 (charging Petitioner with two separate violations of 18 U.S.C. § 924(c)(1)(A)(ii) under Counts Two and Twelve; *see also* 18 U.S.C. § 924(c)(1)(A)(ii) (2022) (West) (providing that, "in addition to the punishment provided for such crime of violence" in Count One, a convicted person "shall . . . be sentenced to a term of imprisonment of not less than 7 years"); *and* 18 U.S.C. § 924(c)(1)(D)(ii) (prohibiting any "term of imprisonment imposed on a person under this subsection" from "run[ning] concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence . . . during which the firearm was used, carried, or possessed").[4] In short, Petitioner was sentenced "a full [18] years longer 'than what Congress has now deemed an adequate punishment for comparable § 924(c) conduct.'" *McCoy*, 981 F.3d at 285 (quoting *United States v. Redd*, 444 F. Supp. 3d 717, 723 (E.D. Va. 2020)). The Court finds that the severity of Petitioner's sentence and the enormous disparity of almost two decades' incarceration, compared to what he would face today, constitute extraordinary and compelling reasons for relief. *Id.*

2. Case-Specific Factors and the COVID-19 Pandemic

Petitioner argues that the second "extraordinary and compelling reason" warranting relief is the combination of his incarceration during the COVID-19 pandemic and his youth at the time of the offense. Pet'r's Mot. at 14-16. During the COVID-19 pandemic, courts have found

---

[4] The Court finds unpersuasive the Government's attempt "to imagine a plea agreement scenario" in which, today, they would offer that Petitioner plead to "the six instances in which he brandished a firearm." Mem. Opp'n at 3. "[T]o speculate as to how a charge, plea, and sentencing would have looked had the [First Step Act] been in effect . . . is problematic because it cannot account for the discretionary authority of either a prosecutor or a court." *United States v. Jackson*, 964 F.3d 197, 205 (3d Cir. 2020); *see also United States v. Pierre*, 372 F. Supp. 3d 17, 22 (D.R.I. 2019) ("The Government's approach . . . effectively requires the Court to employ a prosecutor-friendly 'way-back machine' to conjure how the charge, plea, and sentencing would have looked had the [First Step Act of 2018] been in effect."). The Court will not exercise its discretion based on speculation.

7

extraordinary and compelling reasons for relief "when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases). "Notably, the *fear* of contracting a communicable disease proves insufficient to justify a sentence modification." *Id.* (emphasis in original) (internal quotations omitted).

Petitioner does not argue that he is particularly susceptible nor at a particularized risk of contracting COVID-19 at his facility. He simply notes that he contracted COVID-19 in December 2020, from which he reportedly suffered "cough[ing], body aches, fever, diarrhea, chills, and a headache." Pet'r's Mot. at Ex. 4, 28. Petitioner does not disclose whether he has any underlying health conditions, and his PSR did not reflect any, but he claims to still experience shortness of breath, dizziness, and loss of smell. *Id.* at Ex. 3; PSR at ¶¶ 64-65. Petitioner has also received two doses of the COVID-19 vaccine. Pet'r's Mot. at Ex. 3. Overall, the Court finds that he has not demonstrated that he is particularly susceptible to serious illness or death should he contract the virus again. *See United States v. Nabaya*, No. 3:17cr3, 2021 WL 54361, at *5 (E.D. Va. Jan. 6, 2021) ("Considering that Nabaya has already recovered from COVID-19, his asserted health conditions, without more, do not persuade this Court to grant compassionate release.").

Moreover, although the Court recognizes and in no way minimizes the harsh realities that incarcerated individuals have faced during the pandemic, Petitioner does not mention the conditions at his BOP facility with respect to COVID-19 at all, let alone whether any potential harsher conditions of confinement are unique to him, or "extraordinary," for purposes of compassionate release. *See United States v. Ramirez*, No. 98cr927, 2021 WL 5233512, at *5 (S.D.N.Y. Nov. 10, 2021) ("If challenging the conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every inmate who has been in BOP

custody at any time since March 2020 would be entitled to a sentence reduction.").[5] Thus, Petitioner has failed to show that he faces either "a particularized susceptibility to the disease [or] a particularized risk of contracting the disease at his prison facility" such that the COVID-19 pandemic constitutes an extraordinary and compelling reason warranting relief. *Feiling*, 453 F. Supp. 3d at 841; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

Petitioner also points to his youth at the time he committed the instant offense as an additional factor establishing extraordinary and compelling reasons for relief. Pet'r's Mot. at 14. In support, Petitioner notes that Section 608 of the First Step Act now defines "youth" as "a prisoner who was 21 years of age or younger at the time of the commission or alleged commission of the criminal offense." Pet'r's Mot. at 15; *see also* First Step Act of 2018, § 608(c), 132 Stat. at 5245. He also cites to established United States Supreme Court precedent recognizing youth as an important mitigating factor in sentencing. *Id.* at 15-16. The Government does not address Petitioner's youth with regard to this argument. *See* Mem. Opp'n at 3-11.

It is well established that a petitioner's relative youth at the time he committed an offense is a factor the Court may consider in deciding whether "extraordinary and compelling reasons" justify relief. *See McCoy*, 981 F.3d at 284; *see also Bellamy v. United States*, 474 F. Supp. 3d 777, 785 (E.D. Va. 2020) ("A petitioner seeking compassionate release may offer a combination of factors to establish extraordinary and compelling reasons for a sentence reduction, including

---

[5] Petitioner argues that the Government "misconstrues" his argument with regard to the pandemic, which he clarifies is that "the proliferation of COVID-19 in federal prisons has resulted in a more punitive and less rehabilitative period of incarceration." Pet'r's Reply at 12. Again, the Court recognizes the unique conditions incarcerated individuals have and continue to face in light of COVID-19, but the consequences of incarceration during the pandemic *generally*, as opposed to those that Petitioner faces *at his facility*, are insufficient to constitute an extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i). *Feiling*, 453 F. Supp. 3d at 841.

relative youth at the time of the sentence."). The Supreme Court has also repeatedly recognized the unique role that youth plays in both the commission of crimes and sentencing. *See, e.g., Jones v. Mississippi*, 141 S. Ct. 1307, 1316 (2021) ("Youth matters in sentencing."); *Miller v. Alabama*, 567 U.S. 460, 471 (2012) (summarizing precedent establishing that "children are constitutionally different from adults for purposes of sentencing" because "juveniles have diminished culpability and greater prospects for reform"); *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005) (noting three significant differences between juveniles and adults: (1) "a lack of maturity and underdeveloped sense of responsibility"; (2) "more vulnerab[ility] or susceptib[ility] to negative influences and outside pressures, including peer pressure"; and (3) "the character of a juvenile is not as well formed as that of an adult").

Petitioner was only 20 years old when he engaged in the instant offense conduct and only 21 years old at the time that he was sentenced to 39 years in prison. *See* PSR at 2-4 (Petitioner was born on June 1, 1987, participated in the offense conduct between December 11, 2007, and January 31, 2008, and was sentenced on January 5, 2009). He has therefore been incarcerated for almost his entire adult life. *See United States v. Bailey*, 547 F. Supp. 3d 518, 524 (E.D. Va. 2021) (granting compassionate release after considering, in part, that petitioner had been incarcerated "well over half his life and virtually all of his adult life"); *United States v. Wilkerson*, No. 5:96cr167, 2021 WL 1062353, at *3 (E.D.N.C. Mar. 19, 2021) (same). The Court finds this fact bolsters Petitioner's claim that extraordinary and compelling reasons justify relief in his case.

3. <u>18 U.S.C. § 3553(a) Factors</u>

Overall, the § 3553(a) factors also weigh in favor of a reduction in Petitioner's sentence. The nature and circumstances of Petitioner's offense are unquestionably serious. *See* 18 U.S.C. § 3553(a)(1). Between December 11, 2007, and January 31, 2008, Petitioner committed four

10

armed robberies and two armed carjackings, during which he victimized seven different people and four different businesses. PSR at ¶¶ 5-20, 34. Upon admitting to his involvement in the offense, Petitioner told case agents "that he did so because he was homeless and needed money for food and hotel expenses." *Id.* at ¶ 21. During a subsequent interview, Petitioner became uncooperative and made a veiled threat to a case agent. *Id.* at ¶¶ 25, 38. He was attributed with a total loss amount of $1,677.60. *Id.* at ¶ 37. Petitioner also promptly accepted responsibility for his actions by admitting to participating in the offense and pleading guilty. *Id.* at ¶¶ 39-41.

Prior to the instant offense, at 21 years old, Petitioner had already developed a lengthy criminal history dating back to when he was 15. PSR at ¶ 42. He received multiple juvenile convictions for breaking and entering, grand larceny, destroying private property, hit and run, traffic violations, eluding police, entering property to cause damage, and grand larceny auto. PSR at ¶¶ 42-48. As an adult, he already incurred several convictions for obstructing justice, identity theft, contempt, grand larceny of a firearm, and possession of a firearm by a convicted felon. *Id.* at ¶¶ 49-51. While this trend is certainly concerning, the Court also recognizes the greater context that Petitioner developed most of his record as a juvenile and has spent the last 14 years incarcerated. *See* discussion *supra* Section III.B.2.

Moreover, as he told case agents, Petitioner "was residing at various hotels" at the time he committed this offense. PSR at ¶ 63. At the time of sentencing, Petitioner had effectively only attained an eighth-grade level of education. *Id.* at ¶ 72. He "failed every class in which he was enrolled" and went on to participate in the Dominion and Potomac Job Corps. *Id.* at ¶¶ 72-73. Petitioner received a diploma that, according to records obtained by the Probation Office, was "equivalent to a high school diploma." *Id.* at ¶ 73. The Court notes, however, that Petitioner received this diploma only five months after he finished his eighth-grade classes. *Id.* While

incarcerated and awaiting sentencing, Petitioner was diagnosed with major depression, cannabis dependence, alcohol abuse, and antisocial behavior. *Id.* at ¶ 67. Petitioner notes that his untreated mental illness likely contributed to the poor judgment he exercised prior to his incarceration. Pet'r's Mot. at 16. The PSR also reflects that Petitioner's criminal history runs parallel to his history of substance abuse. *See* PSR at ¶¶ 69-71.

The Court also considers Petitioner's post-sentencing conduct and any rehabilitative efforts he has made. *See Concepcion v. United States*, 142 S. Ct. 2389, 2401 (2022) ("The text of the First Step Act does not so much as hint that district courts are prohibited from considering evidence of rehabilitation, disciplinary infractions, or unrelated Guidelines changes."); *Pepper v. United States*, 562 U.S. 476, 491 (2011). As Petitioner himself concedes, his disciplinary record is not insignificant. Pet'r's Mot. at 18. He incurred three infractions in 2010 for being in an unauthorized area and refusing to obey an order, and did not incur any infractions for nearly seven years thereafter. *Id.* at Ex. 2, 2. Between 2017 and 2020, Petitioner accrued 18 infractions for being insolent to a staff member, being unsanitary or untidy, being in an unauthorized area, refusing a work assignment, refusing to obey an order, assaulting without serious injury, threatening bodily harm, and engaging in sexual acts. *Id.* As a result of these infractions, Petitioner was sent to the Special Management Unit (SMU) at AUSP Thomson from October 2019 until February 2021, where he describes he endured conditions that were "unimaginably punitive and severe." Pet'r's Mot. at 18-20. Petitioner successfully worked his way out of SMU and has not incurred any disciplinary infractions since 2020. *Id.* at 19-20.

Despite Petitioner's "past transgressions," the Court also gives significant weight to the "multitude of redemptive measures" that he has taken since he was initially sentenced. *United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019). To his credit, Petitioner appears to have

12

maintained a strong support system while incarcerated. Pet'r's Mot. at 20-21. Indeed, Petitioner's parents indicate that their relationships with him have strengthened over the course of his imprisonment. *Id.* at Exs. 5, 6. While incarcerated, Petitioner has earned his GED, completed a drug education program, and has successfully completed numerous other educational programs, including various vocational training courses. *Id.* at Ex. 2; *see also* 18 U.S.C. § 3553(a)(2)(D). He also continues to participate in the Financial Responsibility Program in order to make his court-ordered payments. *Id.*; *see also* 18 U.S.C. § 3553(a)(7).

Further, Petitioner's release plan provides the Court with confidence that he is unlikely to recidivate and that the public will be protected because Petitioner plans to enter a vastly different situation than the one he faced when he committed this offense. *See* 18 U.S.C. § 3553(a)(2)(B)-(C). Specifically, upon release, Petitioner plans to live with his mother and stepfather, attend church, and take advantage of the various employment opportunities available to him. Pet'r's Mot. at Exs. 5-7. Remarkably, Petitioner has numerous people committed to assisting him with all aspects of his reentry so that he can be a productive member of society. *Id.* As he readjusts, the Court notes that he will also be subject to a period of five years of supervised release. *See United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Congress intended supervised release to assist individuals in their transition to community life."); *see also United States v. Marks*, 455 F. Supp. 3d 17, 35 (W.D.N.Y. 2020) (granting compassionate release and finding "whatever risk there is [in reducing petitioner's sentence] can be further mitigated by supervised release").

Overall, the Court finds that the § 3553(a) factors weigh in Petitioner's favor and a reduction in sentence would not undercut respect for the law nor the need to afford adequate deterrence. Critically, Petitioner shows extraordinary and compelling reasons for release due to the severity of his sentence, combined with the enormous sentencing disparity between what he

faced in 2009 and what he would face today, as well as his youth at the time he committed the offense. *McCoy*, 981 F.3d at 285; *Bellamy*, 474 F. Supp. 3d at 785. Petitioner therefore qualifies for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is **GRANTED**. The Court reduces Petitioner's sentence to **TWO-HUNDRED-FIFTY-TWO (252) MONTHS**. This sentence consists of **EIGHTY-FOUR (84) MONTHS** on Count One, **EIGHTY-FOUR (84) MONTHS** on Count Two, and **EIGHTY-FOUR (84) MONTHS** on Count Twelve, all to run consecutively. All other provisions of Petitioner's sentence **SHALL** remain unchanged.

The Clerk is **DIRECTED** to send a copy of this Order to Petitioner, the United States Attorney, the Federal Public Defender, and the United States Probation Office.

**IT IS SO ORDERED.**

Norfolk, Virginia
August 2, 2022

Raymond A. Jackson
United States District Judge